IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LIONEL T. HONG-LONG,

*Plaintiff,*

v.

BRENTWOOD BOROUGH POLICE
DEPARTMENT, *et al,*

*Defendants.*

Civil Action No. 2:25-cv-1597

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Lionel T. Hong-Long ("Hong-Long") filed this civil rights action against Defendants Brentwood Borough Police Department, Carl Rech ("Rech"), Scott Massey ("Massey"), William Churilla ("Churilla"), Michael Ball ("Ball"), and U.S. Marshal[l] Deputy Galbus ("Galbus"); (collectively, "Defendants").[1]  His claims deal with the investigation that led to his arrest, the filing of federal criminal charges at Criminal No. 2:22-cr-210, and the various proceedings and events that led to his conviction and sentence.  Defendants filed motions to dismiss all claims against them.  (ECF Nos. 15 and 19).  For the following reasons, the motions will be granted.

### I.    FACTUAL BACKGROUND

On August 23, 2022, a federal grand jury indicted Hong-Long for possession with intent to distribute controlled substances and being a felon in possession of a firearm.  (Criminal No.

---

[1] Defendants Brentwood Borough Police Department, Rech, and Massey will be collectively referred to as "Brentwood Borough Defendants."  Churilla, Ball, and Galbus will be collectively referred to as "Federal Defendants."

1

2:22-cr-210, ECF No. 3).[2]  Churilla is a Drug Enforcement Administration ("DEA") task force officer and an officer with the City of Pittsburgh Bureau of Police.  He was the federal case agent for the investigation of Hong-Long.  After an arrest warrant was issued for Hong-Long, Galbus and other law enforcement officers arrested Hong-Long on June 30, 2023.  (Criminal No. 2:22-cr-210, ECF Nos. 5 and 9).  Galbus is a Deputy United States Marshal with the United States Marshal Service ("USMS").  In the course of the arrest, Hong-Long assaulted Galbus and two other law enforcement officers.

Consequently, on July 18, 2023, Hong-Long was indicted in a separate federal criminal case, Criminal No. 2:23-cr-159, on three counts of assault of law enforcement officers, one of which related to his assault of Galbus, and one count of felon in possession of a firearm and ammunition.  These charges stemmed from the events surrounding Hong-Long's arrest.  This case was ultimately consolidated with Criminal No. 2:22-cr-210 and closed.

On June 24, 2025, a federal grand jury returned a superseding indictment in Criminal No. 2:22-cr-210 charging Hong-Long with two counts of possession with intent to distribute controlled substances, two counts of being a felon in possession of a firearm and ammunition, three counts of assault of law enforcement officers, and one count of possessing a firearm in connection with a drug-trafficking offense. (Criminal No. 2:22-cr-210, ECF No. 95).  On October 28, 2025, Hong-Long pled guilty to eight felony offenses, including the assault of Galbus.  (Criminal No. 2:22-cr-210, ECF No. 138).  He was sentenced on March 17, 2026, and

---

[2] The Court is permitted to consider matters of public record, including court-filed documents, at the motion to dismiss stage. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citation omitted).  It may rely on these types of documents to reconstruct the relevant chronology of events. Here, the Court takes judicial notice of Hong-Long's criminal case proceedings. *Id.*; *see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993) (defining public record to include criminal case dispositions, such as convictions or mistrials.)

his sentence was later amended on April 20, 2026. (Criminal No. 2:22-cr-210, ECF Nos. 160 and 169). Hong Long was sentenced to 180 months of imprisonment followed by 6 years of supervised release. (Criminal No. 2:22-cr-210, ECF No. 169). He filed a notice of appeal that is docketed in the United States Court of Appeals for the Third Circuit at Case No. 26-1588. Ball, an Assistant United States Attorney with the United States Attorney's Office for the Western District of Pennsylvania, prosecuted Hong-Long at Criminal No. 2:22-cr-210.

## II.    STANDARD OF REVIEW

### A.  Rule 12(b)(1)

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is

3

present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

## B. *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). In practice, this liberal pleading standard works as "an embellishment of the notice-pleading standard set forth in the Federal Rules of Civil Procedure." *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted). In keeping with its duty to "construe pro se complaints liberally ... [the Court] will consider" additional facts included in Hong-Long's documents that were filed after the amended complaint, to the extent that they are consistent with the allegations in the amended complaint. *Bush v. City of Philadelphia*, 367 F. Supp. 2d 722, 725 (E.D. Pa. 2005).

## II.    ANALYSIS

The Court construes Hong-Long's complaint as containing constitutional claims under *Bivens*[3] against Federal Defendants. *See Muniz v. United States*, 149 F.4th 256, 260 (3d Cir. 2025) (describing "[t]he *Bivens* doctrine" as "the ability of the Court to imply a damages cause of action [against federal officers] for a constitutional wrong ...."); *Murphy v. Bloom*, 443 F.

_____

[3] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

4

App'x 668, 669 n.1 (3d Cir. 2011) (unpublished) ("*Bivens* recognized a private cause of action to recover damages against federal actors for constitutional violations, similar to the cause of action against state actors provided by 42 U.S.C. § 1983."). Hong-Long alleges that in August 2022, Churilla violated his Fifth and Sixth Amendment rights by "declaring false information under penalty of perjury." (ECF No. 5, p. 3). Galbus is alleged to have violated Hong-Long's Fourth Amendment rights by causing an "unlawful arrest." (*Id.*). Ball allegedly committed prosecutorial misconduct and violated Hong-Long's Fifth, Sixth, and Tenth Amendment rights by "vouching for Officer Carl Rech"—presumably at a December 17, 2024, suppression hearing—and allegedly conspiring with Rech to tamper with evidence and to provide false statements. (*Id.*).

As to Brentwood Borough Defendants, Hong-Long brings his claims under 42 U.S.C. § 1983. By its terms, § 1983 does not create a substantive right; it merely provides a method for vindicating federal rights conferred by the United States Constitution and the federal statutes that it describes. Hong-Long alleges that on October 12, 2021, Rech violated "The Police Misconduct Statutes which prohibits discrimination on the basis of race, color, national origin, sex and religion by state and local law enforcement agencies." *(Id.* at 2). He further claims that Rech violated his Fourth Amendment rights by using excessive force, and his Fifth Amendment rights by "producing lies under oath causing perjury" and "tamper[ing] with evidence therefore causing an obstruction of justice." (*Id.*). Massey is alleged to have violated Hong-Long's Fourth Amendment rights. (*Id.*). Lastly, Hong-Long claims that the Borough of Brentwood Pittsburgh Police Department failed to train its police officers. (*Id.* at 2-3).

The Court holds that many of these claims are time-barred, and the claims that are not time-barred, fail to state a claim.

5

### A. Time-barred claims

Hong-Long filed this action in October 2025. (ECF Nos. 1 and 5). His complaint lists five dates for the events giving rise to his claims against Defendants: (1) October 12, 2021, the date of the crimes that were charged in the indictment at Criminal No. 2:22-cr-210 (Criminal No. 2:22-cr-210, ECF No. 3); (2) August 30, 2022; (3) June 30, 2023, the date he was arrested and allegedly assaulted three law enforcement officers, including Galbus; (4) June 18, 2024, the date his first attorney was removed from Criminal No. 2:22-cr-210 and a new attorney was appointed (*Id.* at ECF No. 56); and (5) December 17, 2024, the date a suppression hearing was held in Criminal No. 2:22-cr-210 (*Id.* at ECF No. 74). All pre-October 2023 claims are time-barred for the following reasons.

"The statute of limitations for a *Bivens* claim, as for claims arising under 42 U.S.C. § 1983, is borrowed from the forum state's personal injury statute." *Brown v. Tollackson*, 314 F. App'x 407, 408 (3d Cir. 2008) (citations omitted). "In Pennsylvania, the statute of limitations for personal injury actions is 2 years." *Id.* (citing 42 Pa. C.S. § 5524). However, federal law determines the time of accrual for a cause of action. *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (stating that "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law" (emphasis in original)); *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991) (stating that federal law governs the accrual of § 1983 claims). Generally, a claim accrues in a federal cause of action when a plaintiff has "a complete and present cause of action," that is, when "the plaintiff can file suit and obtain relief." *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997) (citations omitted). For *Bivens* claims, accrual occurs "when the plaintiff knows, or has reason to know, of the injury that forms the basis of the action." *Wooden v. Eisner*, 143 F. App'x

6

493, 494 (3d Cir. 2005) (citing *Sameric Corp. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998)). Similarly, § 1983 claims accrue when a plaintiff has knowledge or should have knowledge of the injury or injuries that underlie his action. *Genty*, 937 F.2d at 919.[4]

The Court finds that all of Hong-Long's claims arising out of pre-October 2023 events are time-barred. To the extent Hong-Long is challenging the traffic stop (that led to the crimes charged in the original indictment at Criminal No. 2:22-cr-210), those claims accrued on the date of the stop–October 12, 2021–and are untimely. His claim regarding missing body camera footage from October 12, 2021, accrued on the day that he received the discovery in his criminal case - August 2023 (and September 2023)–and he learned that the body camera footage he sought apparently did not exist. (Criminal No. 2:22-cr-210, ECF No. 26). Because this was more than two years before Hong-Long filed his complaint, his claim is untimely. Also untimely are claims relating to August 2022, and the filing of the Indictment against Hong-Long at Criminal No. 2:22-cr-210 on August 23, 2022. Hong-Long's excessive force claims accrued on the day of his arrest–June 30, 2023–as that is the date on which the officers allegedly subjected him to excessive force. *See Nguyen v. Pennsylvania,* 906 F.3d 271, 273 (3d Cir. 2018) (stating that a claim accrues when the last needed act to complete the tort occurs, and "[f]or a search, that is the moment of the search."); *Montgomery v. De Simone,* 159 F.3d 120, 126 (3d Cir. 1998) (stating that false arrest and false imprisonment claims typically accrue on the date of the arrest

---

[4] Pennsylvania's discovery rule will toll the statute of limitations on a § 1983 claim until "the plaintiff knows, or reasonably should know, (1) that [the plaintiff] has been injured, and (2) that [his or her] injury has been caused by another party's conduct." *Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991) (quoting *Cathcart v. Keene Indus. Insulation*, 471 A.2d 493 (Pa. Super. Ct. 1984)). But "[a] plaintiff's ignorance regarding the full extent of his injury is irrelevant to the discovery rule's application, so long as the plaintiff discovers or should have discovered that he was injured." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015). "[T]he reasonable diligence standard is objective, as the question is not what the plaintiff actually knew of the injury or its cause, but what he might have known by exercising the diligence required by law." *Nicolaou v. Martin*, 195 A.3d 880, 893 (Pa. 2018) (citations omitted).

because, at that point, "the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." (citation omitted)); *LeBlanc v. Snavely*, 453 F. App'x 140, 142 (3d Cir. 2011) ("Claims for false arrest and assault (which would include [plaintiff's] excessive force claim) typically accrue on the date of the arrest or the assault, because, at that point, the plaintiff has reason to know of the injury." (citation omitted)).

Equitable tolling may apply to claims brought against the Government. *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 93-96 (1990) (holding that because federal statutes of limitations are not jurisdictional, "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Id.* at 96-97). Additionally, federal law permits equitable tolling of § 1983 claims. *Lake v. Arnold*, 232 F.3d 360, 370 n.9 (3d Cir. 2000).[5] "Equitable tolling is a rare remedy to be applied in unusual circumstances...." *Wallace*, 549 U.S. at 396. According to the Third Circuit, tolling is generally only appropriate in three instances:

> (1) where a defendant actively misleads a plaintiff with respect to [his] cause of action; (2) where the plaintiff has been prevented from asserting [his] claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts [his] claims in a timely manner but has done so in the wrong forum.

*Kach v. Hose*, 589 F.3d 626, 643 (3d Cir. 2009) (quotation marks and citations omitted). To obtain the benefit of equitable tolling, a party must show that he "exercised due diligence in pursuing and preserving her claim." *Omar v. Blackman*, 590 F. App'x 162, 166 (3d Cir. 2014) (citation omitted).

---

[5] The Court would note that "in exceptional circumstances, federal tolling principles can override state tolling rules that conflict with federal law or policy." *Weber v. Erie Cnty.*, 2025 WL 800444 (March 13, 2025) (citations omitted); *see also Bd. of Regents v. Tomanio*, 446 U.S. 478, 485 (1980) (explaining that "federal courts [may] ... disregard an otherwise applicable state rule of law only if the state law is inconsistent with the Constitution and laws of the United States").

Hong-Long has not alleged any facts that would allow the Court to consider equitably tolling the statute of limitations such that it would render his pre-October 2023 claims timely. Hong-Long has not presented any evidence of deception on Defendants' behalf. Nor does the record (including that from his criminal case) reflect an active effort by Defendants or any third party to bar Hong-Long from exercising his rights. Lastly, there is no evidence to suggest that Hong-Long made a previous attempt to bring this action to the wrong forum. Therefore, because no extraordinary circumstances prevented Hong-Long from timely filing the instant action, the Court holds that his pre-October 2023 *Bivens* and § 1983 claims are barred by the statute of limitations.

The Court is dismissing as untimely these specific claims against the Federal Defendants: (1) that Churilla violated Hong-Long's Fifth Amendment and Sixth Amendment rights in August 2022; and (2) that Galbus violated Hong-Long's Fourth Amendment rights on June 30, 2023. Furthermore, the following § 1983 claims against the Brentwood Borough Defendants are time-barred: (1) that on October 12, 2021, Rech violated "The Police Misconduct Statutes"; (2) that Rech violated Hong-Long's Fourth Amendment rights by using excessive force on October 12, 2021 (or June 30, 2023, if he was involved in Hong-Long's arrest); (3) that Rech tampered with evidence on October 12, 2023; and (4) that Massey violated Hong-Long's Fourth Amendment rights on October 12, 2021. The dismissal of these claims will be with prejudice as leave to amend would be futile.[6] *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997) (a court may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility).

---

[6] "An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss." 3 James Wm. Moore et al., *Moore's Federal Practice* ¶ 15.15 (3d ed. 2024).

**B. Remaining claims against Federal Defendants**

The only remaining claims against Federal Defendants that are not time-barred are that Ball allegedly committed prosecutorial misconduct by "vouching for Officer Carl Rech" at a December 17, 2024, suppression hearing, and allegedly conspiring with Rech to tamper with evidence and to provide false statements. These claims will be dismissed with prejudice as leave to amend would be futile.

Ball's immunity assertion is a threshold issue for the Court to decide since immunity, when justly invoked, properly shields defendants "not only from the consequences of litigation's results but also from the burden of defending themselves." *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967). Prosecutors have absolute immunity from federal civil suits for acts "'intimately associated with the judicial phase of the of the criminal process,' such as 'initiating a prosecution and ... presenting the State's case.'" *Yarris v. Cnty. of Delaware*, 465 F.3d 129, 135 (3d Cir. 2006) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976)). *See also Brawer v. Horowitz*, 535 F.2d 830, 834 (3d Cir. 1976) (holding that federal prosecutors are entitled to the same absolute immunity for *Bivens* claims afforded to state prosecutors for § 1983 claims). Absolute immunity extends to the decision to initiate a prosecution, *Imbler*, 424 U.S. at 431, including "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992), presenting a state's case at trial, *Imbler*, 424 U.S. at 431, and appearing before a judge to present evidence, *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020). Absolute immunity can extend to "the duties of the prosecutor ... involv[ing] actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Mancini v. Lester*, 630 F.2d 990, 994 n.6 (3d Cir. 1980) (quoting *Imbler*, 424 U.S. at 431 n.33). Prosecutors are afforded this immunity because "harassment by

unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler*, 424 U.S. at 423.

According to Hong-Long, Ball used false testimony/evidence during the December 17, 2024, suppression hearing, and conspired with Rech to provide such testimony. Hong-Long's claim focuses on acts that are intimately associated with the criminal process. Solicitation and presentation of testimony to a jury, even if perjured, is a quintessential advocatory act that is protected by prosecutorial immunity. *Karkalas v. Marks*, No. CV 19-948, 2019 WL 3492232, at *14 (E.D. Pa. July 31, 2019), (finding prosecutor entitled to prosecutorial immunity for allegedly false statements made to grand jury for *Bivens* claim), *aff'd*, 845 F. App'x 114 (3d Cir. 2021); *Burns v. Reed*, 500 U.S. 478, 487 (1991) (holding that prosecutor was absolutely immune for his actions appearing for the state in a probable cause hearing to obtain a search warrant). Hong-Long's claim that Ball used false testimony/evidence during the December 17, 2024, suppression hearing will be dismissed with prejudice as leave to amend would be futile.

However, to the extent Hong-Long alleges that Ball conspired with Rech to tamper with evidence, the Court is hesitant to find that prosecutors are entitled to absolute immunity when they seek to generate evidence for ongoing judicial proceedings and are seemingly acting in an investigative function. Nevertheless, Hong-Long's allegation that Ball tampered with evidence does not give rise to a viable *Bivens* claim.

Through the enactment of § 1983, Congress authorized a civil cause of action against state actors for violations of civil rights, but Congress has never enacted a comparable statutory authorization for civil rights actions against federal actors. In 1971, the Supreme Court of the United States held that, "even absent statutory authorization, it would enforce a damages

remedy" to compensate individuals who experienced violations by federal officers of the Fourth Amendment's prohibition against unreasonable searches and seizures. *Ziglar v. Abbasi*, 582 U.S. 120, 130-31 (2017); *Bivens*, 403 U.S. at 397. Subsequently, the Court extended the *Bivens* cause of action in two cases involving other types of constitutional violations. First, in *Davis v. Passman*, 442 U.S. 228, 248-49 (1979), the Court held that the Fifth Amendment's Due Process Clause provided an implied damages remedy to an administrative assistant claiming that a Congressman had discriminated against her based on gender. Next, the Court concluded that the Eighth Amendment's prohibition on cruel and unusual punishment implied a cause of action for damages against federal prison officials who had failed to provide adequate medical treatment to an asthmatic inmate. *See Carlson v. Green*, 446 U.S. 14, 16 n.1 (1980).

These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Supreme Court has approved of an implied damages remedy under the Constitution itself. It has declined to further extend *Bivens* since these decisions. It has expressly limited *Bivens* actions to contexts previously recognized. *See Corr. Srvs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (referring to *Bivens* as a "limited holding."); *see also Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017) (noting that "over the course of nearly four decades, the Supreme Court has repeatedly refused to recognize *Bivens* actions in any new contexts"). "Prescribing a cause of action is a job for Congress, not the courts." *Goldey v. Fields*, 606 U.S. 942, 942-43 (2025) (internal quotation omitted); *see also Xi v. Haugen*, 68 F.4th 824, 832 (3d Cir. 2023) ("In the fifty-two years since *Bivens* was decided ... the Supreme Court has pulled back the reins to what appears to be a full stop and no farther.").

Accordingly, the Court must first ascertain whether Hong-Long's claim under *Bivens* presents a "new context" compared to the three cases where that Court explicitly authorized a

*Bivens* remedy. *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020) (citation omitted). When the context is distinguishable, it will not authorize such an action if it sees any "reason to pause before applying *Bivens* in [the] new context[.]" *Id.* A context is new if it "is different in a meaningful way from previous *Bivens* cases decided by" the Supreme Court. *Ziglar*, 582 U.S. at 139. Whether a context is new is an "easily satisfied" test because "a modest extension [of the *Bivens* action] is still an extension." *Id.* at 147–49. Even "significant parallels to one of the [Supreme] Court's previous *Bivens* cases" may not be enough. *Id.* at 147.

A claim alleging that a prosecutor conspired with an officer to tamper with evidence is meaningfully different from the claims recognized in *Bivens* and its progeny. Because Hong-Long's claim arises in a new context, the Court can allow it to go forward only if it does not doubt that it is at least as capable as Congress of "weigh[ing] the costs and benefits of allowing a damages action to proceed." *Ziglar*, 582 U.S. at 136. "[E]ven a single 'reason to pause'" prohibits recognition of a *Bivens* action in a new context. *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (quoting *Hernandez*, 589 U.S. at 102).

Multiple factors counsel against the Court recognizing a new cause of action under *Bivens*. Doing so would potentially subject federal prosecutors to a flood of damages claims from criminal defendants, forcing them to engage in collateral—potentially duplicative— litigation while attempting to enforce criminal laws. It would also potentially burden the federal courts with a parallel civil case for every criminal prosecution. Hong-Long already has a venue in which to raise concerns about his criminal case. He filed motions challenging various aspects of the criminal process (some alleged violations similar to that asserted here), and he has a pending appeal in the Third Circuit. Further, as the Federal Defendants accurately note, there are remedies already authorized to recognize a potential damages suit – the Federal Tort Claims Act,

28 U.S.C. § 2671 *et seq.*, the internal grievance procedures of the agencies (i.e., USMS and DEA), and the Department of Justice's Office of the Inspector General (OIG) investigation procedure. (ECF No. 20, pp. 8-9). Hence, it would be unwise for the Court to recognize a cause of action when Congress has declined to do so, and it will not do so in this case. Therefore, Hong-Long's *Bivens* claims against Ball will be dismissed with prejudice as leave to amend would be futile.

The Court would finally note that Hong-Long's *Bivens* claims are really a collateral attack on his conviction and sentence.[7] "Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution," although § 2241 may be used when the remedy provided by § 2255 is "inadequate or ineffective." *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002). In the event Hong-Long is unsuccessful in his appeal to the Third Circuit, a § 2255 motion is the proper way to challenge a federal conviction, rather than a *Bivens* action. *See generally Ziglar*, 582 U.S. at 145 ("[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not." (citations omitted)).

## C. Remaining claims against Brentwood Borough Defendants

The remaining claims against Brentwood Borough Defendants that are not time-barred are (1) that Brentwood Borough Police Department failed to train its officers and (2) that Rech

---

[7] In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486. "[T]he reasoning in *Heck* has been applied to bar *Bivens* claims." *Lora-Pena v. F.B.I.*, 529 F.3d 503, 505 n.2 (3d Cir. 2008) (per curiam). Here, the Court need not reach the issue of whether Heck applies to Hong-Long's *Bivens* claims in order to determine the instant motion.

lied at the December 17, 2024, suppression hearing and allegedly tampered with evidence. In order to establish a claim under § 1983, a plaintiff must demonstrate (1) a violation of a right secured by the Constitution and the laws of the United States and (2) that the alleged deprivation was committed by a person acting under color of state law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *see also West v. Atkins*, 487 U.S. 42, 48 (1988) ("To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." (citation omitted)).

Following the decision in *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978), courts concluded that a police department is a sub-unit of the local government and, as such, is merely a vehicle through which the municipality fulfills its policing functions. *See e.g. Johnson v. City of Erie, Pa.*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993). Thus, while a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not. *Id.*; *Martin v. Red Lion Police Dept.*, 146 F. App'x. 558, 562 n.3 (3d Cir. 2005) (stating that police department is not a proper defendant in an action pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality). Brentwood Borough Police Department is not amenable to suit under § 1983. Furthermore, it cannot be held liable for the actions of Rech (or Massey) under a *respondeat superior* theory of liability. The claim against Brentwood Borough Police Department will be dismissed with prejudice as amendment would be futile.

As to the false testimony claim against Rech, the Court holds that Rech is protected by absolute witness immunity. In *Briscoe v. LaHue*, 460 U.S. 325 (1983), the Supreme Court ruled that a police officer who gives false testimony at trial cannot be held liable for a § 1983

15

violation.    It reasoned that it was sound policy to grant police officers the same absolute immunity the common law granted lay witnesses in the same situation:

> Subjecting government officials, such as police officers, to damages liability under § 1983 for their testimony might undermine not only their contribution to the judicial process but also the effective performance of their other public duties. Section 1983 lawsuits against police officer witnesses, like lawsuits against prosecutors, "could be expected with some frequency." Police officers testify in scores of cases every year and defendants often will transform resentment at being convicted into allegations of perjury by the state's official witnesses.

*Id.* at 343 (quoting *Imbler*, 424 U.S. at 425); *see also Williams v. Hepting*, 844 F.2d 138, 142 (3d Cir. 1988) (holding that the immunity covers testimony given in pre-trial proceedings as well as at trial).    The Court finds that Rech is shielded from suit by witness immunity.    *See Simonton v. Ryland-Tanner*, 836 F. App'x 81, 84 (3rd Cir. 2020) (holding that detective's alleged false testimony at trial "squarely falls within the witness immunity principles of the Supreme Court and this Court").

As to the claim that Rech tampered with evidence, Hong-Long provides no factual details as to Rech's specific conduct.    To the best of the Court's understanding, Hong-Long appears to be alleging that Rech's fabrication of evidence somehow forced him to enter a guilty plea.[8]    The Supreme Court has recognized that a police officer's fabrication of and forwarding to prosecutors known false evidence works an unacceptable "corruption of the truth-seeking function of the trial process." *United States v. Agurs*, 427 U.S. 97, 104 (1976).    The law of this circuit is clear that there is a "constitutional rule that framing criminal defendants through use of fabricated evidence . . . violates their constitutional rights[.]" *Dennis v. City of Philadelphia*, 19

---

[8] Based in its review of the lengthy correspondence from Hong-Long, the Court believes that this claim relates to the events of October 12, 2021, and the "fabricating evidence of the Body Cameras that defendants claim that they don't have" (ECF No. 34-1 pp. 9, 18).

F.4th 279, 290 (3d Cir. 2021).[9]  This claim, which is really a challenge to Hong-Long's conviction, is foreclosed by *Heck*.  His conviction remains intact and it may not be challenged in a § 1983 lawsuit.  This claim will be dismissed without prejudice because Hong-Long can renew it if he ever succeeds in overturning his conviction.  *Curry v. Yachera*, 853 F.3d 373, 379 (3d Cir. 2016).

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Federal Defendants' motion and dismiss all claims against them with prejudice.  The Court will also grant Brentwood Borough Defendants' motion and dismiss with prejudice all claims against Massey and Brentwood Borough Police Department.  As to Rech, all claims against him will be dismissed with prejudice except for the claim that he tampered with evidence, which will be dismissed without prejudice so that he can refile should he succeed in overturning his conviction.  Orders of Court shall follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

7/8/26
Date

---

[9] The Due Process Clause of the Fourteenth Amendment prohibits police officers from fabricating evidence. *Halsey v. Pfeiffer*, 750 F.3d 273, 292 (3d Cir. 2014).

17